UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOMESITE INSURANCE OF
THE MIDWEST,

    Plaintiff,

                                    CASE NO. 18-12745
v.                                HON. DENISE PAGE HOOD

DAVID OLSON,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [ECF No. 33]**

**I.    INTRODUCTION**

This lawsuit arises out of a fire that occurred on August 7, 2016 at the home of Elisa Thomas ("Thomas") in Swartz Creek, Michigan. Thomas was the insured of Plaintiff Homesite Insurance of the Midwest. Plaintiff sued Defendant David Olson, alleging one count of negligence. On May 4, 2021, Defendant filed a Motion for Summary Judgment. [ECF No. 33] The Motion has been fully briefed, and a hearing was held.

**II.    BACKGROUND**

In considering the Motion for Summary Judgment, the Court must view all of the facts in a light most favorable to Plaintiff. The following version of the "facts"

1

is consistent with that obligation. On August 7, 2016, Defendant David Olson visited the home of his daughter, Thomas, prior to attending a play in which his granddaughter was performing. Before leaving to attend the play, Olson smoked a cigarette on the wooden back deck of Thomas's home and flicked his ashes over the side of the deck. Olson testified that, prior to leaving the deck to go to the play, he tore off the hot end of the cigarette butt and threw it onto the ground. Approximately 20-30 minutes after Olson discarded his cigarette and left the residence, Thomas's boyfriend, Renaud Rodrigue ("Rodrigue") discovered a fire burning the deck.

Following the fire, Plaintiff retained a fire origin and cause expert, James Maxwell ("Maxwell"), to investigate where the fire started and to determine the possible cause. Maxwell concluded from his investigation that the fire originated at ground level between the deck and a hot tub. ECF No. 38, Ex. C at 2, 7-8. Maxwell included a diagram in his Report that shows what he believes was the location of the origin of the fire and the location of the mulch.[1]

---

[1] Maxwell admitted during his deposition testimony that he incorrectly placed the grill in the center of this diagram and agreed that the grill should be located on the west side of the deck, placed against the railing of the deck. ECF No. 38, Ex. D at 79-80,

2



To reach his conclusion that the fire originated at the ground between the deck and hot tub, Maxwell first interviewed Olson over the phone directly after the subject fire. *Id.* at Ex. D at 21-24. Maxwell testified at his deposition that during this conversation Olson verbally told Maxwell where Olson dropped his cigarette. *Id.* at 77-78, 80, 86. Maxwell testified that "[Olson] told me, three days after the fire, where he was standing on the deck, between the hot tub and the deck, and that's where he deposited his hot ash from the cigarette[,]" *id.* at 104 (emphasis added),

and that "[Olson] said he was standing on the west side of the deck, between the hot tub and the deck, and that's where he dropped the cherry." *Id*. at 104.

Maxwell testified that he interviewed Thomas three days after the subject fire, *id*. at 21, and that she never stated that Olson ashed or dropped any smoking materials in the grass. *Id*. at 24. *See also id*. at Ex. A at 20-21 (Olson admits to flicking ash "over the side of the deck" where there is no grass but, according to Olson, there was dirt), 27-30 (during his deposition, Olson marked an "X" on a Google Earth map of Thomas's deck where Olson alleges he threw his cigarette – very near the area of mulch).

There were no witnesses to either Olson smoking or discarding his cigarette or to the start of the fire in or around the mulch area at ground level. During his deposition, Defendant testified that, on the day of the subject fire, he smoked the cigarette on the deck alone. *Id*. at 23-24; Ex. B at 24. Rodrigue, the only person home at the time the fire was discovered, never saw Olson smoking on the day of the subject fire. Rodrigue testified during his deposition that, from where he was standing when he first saw the fire from a window in the home, he could not see the ground area near the hot tub, and he never opened the sliding glass door to the deck for a better view of the fire. Rodrigue could not see what was burning on or near the grill. Ex. B at 28-29.

4

Maxwell claims he considered, and ruled out, any reasonable alternate causes of the subject fire including: (1) a white cigarette butt found in Thomas's yard; (2) a brown cigarette butt found in Thomas's yard; (3) Thomas's deck being stained about a month before the fire; (4) the propane grill located on the deck; (5) the hot tub located next to the deck; (6) spontaneous combustion of the mulch; (7) the conduct of neighbors; and (8) the heater to Thomas's pool.

Maxwell ultimately determined that "[t]he origin of the fire was identified at the area between the deck and hot tub[,]" and the hot cherry ash from Olson's cigarette caused the fire because there were no other likely ignition sources. ECF No. 38, Ex. C at 8. Maxwell supported his conclusion that the fire originated in the mulch between the hot tub and deck with the following fire pattern analysis evidence: (a) "The fire patterns on the left side and front side of the hot tub indicated the fire originated east of the hot tub. A 'V' pattern on the front of the hot tub further indicated the fire originated between the deck and hot tub[,]" *id*. at 7, (b) the 4X4 posts on the west side of the deck were nearly consumed, *id*.; and (c) the lowest point of burning on 4x4 in middle of deck was just above ground level, ECF No. 38, Ex. D at 161. Maxwell testified during his deposition testimony that he would not expect physical evidence, such as ash, in fires caused by cigarettes. *Id*. at 54-55. Maxwell also noted in his Report that he followed the National Fire Protection Association

5

("NFPA") 921, Guide for Fire and Explosion Investigations, 2017 Edition, during the course of his investigation. ECF No. 38, Ex. B at 3.

## III. LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there

can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYIS

As subject matter jurisdiction of this case is based upon diversity of citizenship between the parties, the Court applies the substantive law of the State of Michigan. *Erie Railroad v. Tompkins,* 304 U.S. 64 (1938). In Michigan, a prima facie case of negligence requires proof that the defendant owed a legal duty to the plaintiff, that the defendant breached that duty, that the breach was the proximate cause of the accident, and that the plaintiff suffered damage. *See, e.g, Mieras v. DeBona*, 452 Mich. 278 (1996).

Defendant argues that Plaintiff cannot, as a matter of law, establish that Defendant's actions were the proximate cause of the fire at Thomas's home. To establish causation, a plaintiff must show both cause in fact and legal (or proximate) cause. *Skinner v. Square D Company*, 445 Mich. 153, 162-63 (1994); *Swan v. Wedgewood Christian Youth and Family Services*, 230 Mich. App. 190, 195 (1998) "[P]roximate cause is shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes." *CSX*

*Transportation, Inc. v. McBride,* 131 S.Ct. 2630, 2642 (2011). "In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. To prevent 'infinite liability,' … courts and legislatures appropriately place limits on the chain of causation that may support recovery of any particular claim." *Id*.

"The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* at 163. In circumstances where there are no fact witnesses to establish the cause in fact of a plaintiff's injury, Michigan Courts allow circumstantial proofs to establish the causal link between the defendant's conduct and the plaintiff's injury. *See Genna v. Jackson*, 286 Mich. App. 413, 417–18 (2009) ("Cause in fact may be established by circumstantial evidence"); *Powell-Murphy v. Revitalizing Auto Communities Env't Response Tr.*, 2020 WL 4722070, at *3 (Mich. Ct. App. Aug. 13, 2020) (same).

The *Skinner* Court summarized a plaintiff's burden regarding proving cause in fact causation:

> All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility. **The evidence need not negate all other possible causes**, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty. **Absolute certainty cannot be achieved in proving negligence circumstantially**; but such proof may satisfy where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence.

8

*Skinner*, 445 Mich. at 166–67 (quoting 57A Am. Jur. 2d, Negligence, § 461, p. 442) (emphasis added).

The plaintiff has the burden of proof for each element of its negligence claim, including causation. *Dumka v. Quaderer*, 151 Mich.App. 68 (1986). The mere fact that an injury occurred is not sufficient to meet the burden of proof for these elements. *Jenks v. Brown*, 219 Mich.App. 415 (1996). Summary judgment is appropriate where the plaintiff fails to meet this burden through admissible evidence. *Quinto v. Cross & Peters Co.*, 451 Mich. 358, 362-63 (1996).

The essential element of causation is an issue of law for the Court. *Davis v. Thornton*, 384 Mich. 138, 145 (1970); *Moning v. Alfono*, 400 Mich. 425, 438 (1977). If reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the Court should decide the issue as a matter of law. *Nichols v. Dobler*, 253 Mich. App. 530, 532 (2002). Proximate cause consists of two separate elements: (1) cause and fact, and (2) legal cause. *Weymers v. Khera*, 454 Mich. 639, 647-48 (1997). If a plaintiff cannot prove either element of proximate cause as a matter of law, summary judgment is warranted.

Defendant maintains that Plaintiff's entire claim is based on impermissible speculation regarding causation and therefore must be dismissed. Defendant relies on the following language in *Skinner*, 445 Mich. at 162-163 (1994): "A plaintiff

9

must adequately establish cause in fact in order for legal cause and 'proximate cause' to become a relevant issue." Defendant argues that, "[w]hile plaintiff may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation." *Id.* at 164.

Defendant also cites *Kaminski v. Grand Truck W.R. Co.*, 347 Mich. 417 (1956) (*Skinner* heavily relied upon *Kaminski*). In *Kaminski,* the Michigan Supreme Court highlighted how reasonable inference and impermissible conjecture differed with regard to causal proof:

> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

*Id.* at 422 (citing *City of Bessemer v. Clowdus*, 261 Ala. 388, 394 (1954)).

It is not "sufficient to submit a causation theory that, while factually supported, is, at best, just a possible as another theory." *Skinner,* 445 Mich. at 155. Instead, "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's

10

injuries would not have occurred." *Id.* at 164-165. Stated differently, "[t]he mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two." *Id.* at 165. "There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury." *Id.* "Something more should be offered the jury than a situation which, by ingenious interpretation, suggest the mere possibility of defendant's negligence being the cause of the injury." *Id.* citing *Howe v. Michigan Cent. R. Co.,* 236 Mich. 577, 584 (1926). Stated plainly, the Court "cannot permit the jury to guess." *Id.* (citing *Daigneau v. Young,* 349 Mich. 632, 636 (1957)).

The Sixth Circuit, applying Michigan substantive law in the diversity context, has adopted and applied the *Skinner* rule in fire loss cases like *American & Foreign Ins. Co. v. General Electric Co.*, 45 F.3d 135 (6th Cir. 1995). That court held that where the plaintiff/subrogee's "proof established only the mere possibility that [an] alleged manufacturing defect could have started the fire" and "failed to establish that the fire would not have occurred were it not for the alleged defect," a directed verdict in favor the defendant in the plaintiff's negligent design lawsuit was appropriate. *American & Foreign Ins. Co.*, 45 F.3d at 140. *See also MEEMIC Ins. Co. v. Hewlett-Packard Co.*, 717 F.Supp.2d 752, 768-769 (E.D. Mich. 2010); *MEEMIC Ins. Co. v.*

11

*DTE Energy Co.*, 292 Mich. App. 278, 285 (2011) (affirmed summary judgment in favor of the defendants in a fire loss case where the plaintiff/subrogee insurance company failed to present sufficient evidence to create a question of fact regarding causation).

Defendant argues that Maxwell's opinion as to the cause of this fire is speculative and wholly lacking in demonstrable, supportive evidence. Defendant asserts that there is no evidence that he ashed his cigarette at the area of origin, and the undisputed evidence is that he ashed his cigarette on the grass to the north of the deck, which was not the origin of the fire. ECF No. 33, Ex. B at 185, 190-91. Defendant insists that there is no evidence the fire first occurred in the mulch and that the undisputed evidence is that the fire first occurred on the grill, on the deck, several feet above the mulch at ground level. *Id.* at 164-65.

Defendant claims that Maxwell was unable to eliminate multiple potential causes of the fire, including ash from the cigarette butt he found on the grass in the area where Defendant testified he discharged smoking material, as he neither collected nor tested it, *id.* at 196-97; sparks related to the hot tub wiring that could have come in contact with a leaky propane tank and ignited the tank, *id.* at 52-53, 64-65; stain-soaked rags (because he performed no testing on them); or even the mulch (which he also did not test). Defendant concludes that Plaintiff cannot

12

establish that "but for" Defendant's conduct, the fire would have occurred as the above alternative viable causes remain. He claims Maxwell is trying to prove Plaintiff's hypothesis solely through the occurrence of the fire and visual inspection, relying on an asserted misinterpreted statement lacking precision or verification, while also ignoring the reported area of origin (the gas grill), as indicated by the lone witness, Mr. Rodrigue. *Id.* at Ex. C at 28.

For these reasons, Defendant contends that Plaintiff cannot defeat the lack of evidence, such that summary judgment in favor of Defendant is required. Defendant states that, on these undisputed facts, Plaintiff cannot prove the cause of this fire, much less the cause having anything to do with Olson. Defendant contends that this is an undetermined fire, as concluded by the Schwartz Creek Fire Department. ECF No. 38, Ex. G.

For the reasons that follow, the Court finds Defendant's arguments insufficient to grant his Motion for Summary Judgment. Defendant does not challenge Maxwell's qualifications as an expert, and there is evidence to support his methodology and conclusions. First, it is undisputed that Maxwell spoke to both Defendant and Thomas three days after the fire occurred. During that conversation, Plaintiff represents that Defendant told Maxwell that Defendant was standing on the deck, between the hot tub and the deck and that is where he dropped the cherry (hot

ash) from his cigarette. Thomas did not indicate at that time that Defendant ashed or dropped any smoking materials in the grass. Defendant admitted to flicking ash over the side of the deck where there was no grass, and he marked an "X" on a map of Thomas's deck signifying where he threw his cigarette – very close to the mulch.

Second, there were no witnesses to the start of the fire, not even Rodrigue, who testified that he could not see the ground area near the hot tub when he saw the fire and did not try to get a better view of the fire. Third, Maxwell identified the following evidence to support his conclusion that the fire originated in the mulch between the hot tub and deck: (1) "The fire patterns on the left side and front side of the hot tub indicated the fire originated east of the hot tub. A 'V' pattern on the front of the hot tub further indicated the fire originated between the deck and hot tub"; (b) the 4X4 posts on the west side of the deck were nearly consumed; and (c) the lowest point of burning on 4X4 in middle of deck was just above ground level.

Defendant contends that Maxwell's opinion and testimony should be inadmissible because he did not sufficiently rule out alternative causes of the subject fire by failing to follow NFPA 921 and failing to test each possible alternative cause. These arguments are deficient. First, although it is true that "NFPA 921 is a well-recognized guide for fire investigation[,]" "as NFPA 921 itself states, it is merely a guide for investigators, and it includes only nonmandatory provisions." *Alford v.*

*Allstate Ins. Co.*, 2013 WL 12181846, at *3 (E.D. Mich. July 8, 2013). *See also AmGuard Ins. Co. v. Fire Sys. of Michigan, Inc.*, 2019 WL 3456809, at *4 (E.D. Mich. July 31, 2019), reconsideration denied, 2019 WL 4876453 (E.D. Mich. Aug. 20, 2019) ("NFPA 921 does not mandate strict compliance with its provisions, including adherence to the scientific method."). Its "purpose is to 'establish guidelines and recommendations for the safe and systematic investigation or analysis of fire and explosion incidents.'" *Id.* (citing NFPA 921 ch. 1.2.1 (2011 ed.)).

The Court finds that there is evidence that Maxwell considered and excluded many possible alternative causes of the subject fire. Maxwell considered the white and brown cigarette butts but excluded each as the cause of the fire because the white butt was found far beyond the area of the deck, and the brown butt was found outside any area of origin. Maxwell ruled out staining the deck a month before the fire as a cause of the fire because no stain-soaked rags were found at the scene, and based upon his interviews with police on the scene, and his own experience based on over 50 fire cause and origin investigations that involved stain. Maxwell ruled out the grill as a cause of the fire because: (1) no witnesses recalled any discussions of, or noticed first-hand, a smell of propane before the subject fire; (2) no witnesses recalled any problems with the grill prior to the subject fire; and (3) the grill was ruled out as a possible cause of the subject fire by mechanical expert, Mark Brennan.

15

The hot tub located next to the deck was ruled out as a cause of the fire because there was no physical evidence which showed the hot tub contributed to the subject fire, there were no reported issues with the hot tub for over six months prior to the fire, and both expert Herrick and Defendant's own expert, Roswell Ard, ruled out the hot tub or any electrical issues as a possible cause of the fire. Maxwell also ruled out spontaneous combustion of the mulch as a cause of the fire based on the physical evidence.

Defendant argues that Maxwell's fire pattern analysis in unreliable as he conducted an investigation in service of confirming his preconceived theory, failing to rule out several alternative causes as he admits he never ruled out stain-soaked rags causing or contributing to this fire. See ECF No. 33, PageID.385-87. Defendant further argues that Maxwell never ruled out mulch spontaneously combusting as a cause in this case, he intentionally disregarded Thomas's admissions she smelled propane leak from grill before the fire, and he admitted he could not rule out that a leak from the propane gas grill was a caused of the fire. *Id.* Finally, Defendant contends that Maxwell admitted that Thomas reported multiple electrical issues before the fire, but he consciously ignored those facts. *Id.*

Defendant argues that Plaintiff fails all four of its own asserted "logical sequence of cause and effect" proofs. and the evidence defeats Plaintiff's own

16

asserted sequence of events in the present case and summary judgment is required. Defendant is mistaken, however, as these arguments are appropriate topics for his cross-examination of Maxwell but do not establish as a matter of law that Maxwell's theory of causation is not possible.

The Court also notes that Defendant's proposed expert, Robert Puddy, testified during his deposition that mulch can ignite from materials which are about 450-500 degrees Fahrenheit. *See* ECF No. 38, Ex. E at 150-51. Puddy stated that a cigarette normally is about 830-1300 degrees Fahrenheit. *Id*. at 152. Based on that information, one could conclude that a cigarette can ignite mulch.

Finally, not only does the law not require strict adherence to NFPA 921, the law does not require that Maxwell test each and every possible cause of the subject fire. In preparing his report, Maxwell visited the scene of the fire, conducted interviews, took photographs of the scene, created a diagram of his theory of causation, conducted a fire pattern analysis, relied on the testing and findings of electrical experts, and tested the evidence in a laboratory inspection. Although those actions can be challenged on cross-examination, and Defendant can introduce evidence of many things (including that, even after a police investigation, the cause of the fire was listed as "undetermined"),[2] for purposes of defeating Defendant's

---

[2] Defendant may also introduce testimony about where he was standing on the porch and that he discarded the cigarette ash away from the area Plaintiff claims was the origin of the fire, That testimony, however, is subject to

summary judgment motion, the Court should conclude that Plaintiff has sufficiently demonstrated a genuine dispute of material fact as to the cause of the fire and established a prima facie case of negligence.

Defendant's Motion for Summary Judgment is denied.

## V. CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Defendant's Motion for Summary Judgment, ECF No. 33, is DENIED.

Dated: March 31, 2023

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

---

an evaluation of Defendant's credibility (motivation) for claiming where he was standing and how and where he discarded the ash from his cigarette.